491 A.2d 107

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Douglas ROBINSON, Appellant.**

Supreme Court of Pennsylvania.

Submitted Jan. 22, 1985.

Decided April 10, 1985.

John W. Packel, Donald S. Bronstein, Philadelphia, for appellant.

Robert B. Lawler, Ann C. Lebowitz, Asst. Dist. Attys., for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDER-MOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION

ZAPPALA, Justice.

Appellant, Douglas Robinson, was convicted in the Court of Common Pleas of Philadelphia of burglary, criminal trespass, and conspiracy and sentenced to two years on probation. The Superior Court affirmed. 321 Pa.Super. 617, 468 A.2d 853. We granted a petition for allowance of appeal.

Appellant and his co-defendant, Rubeana Coleman, lived together in the second floor apartment of a duplex owned by complainant, Debra Carolina, and her husband. Their relationship with Ms. Carolina was at one time friendly but later deteriorated. They became involved in a dispute, in the course of which they withheld payment of rent. They claimed to have been justified in doing so because of a lack of utility service. As a result of the dispute, they moved out of the apartment in April, 1980.

Debra Carolina was the only witness for the Commonwealth. She testified that on April 3, 1980 at about 7:45 p.m. she went to the duplex as a result of a call she received from her cousin. Upon arriving at the duplex, she found the door to the unoccupied first floor apartment, where she had previously resided and kept personal property, open. Appellant, Coleman, and an unidentified person were coming from the duplex with a couch, gold recliner, and tailor-made drapes all belonging to her. Seeing what was occurring, she immediately sought out a police officer whom she found approximately one block from the duplex. After she informed the police officer that a burglary was in progress, the officer told her to go to a certain police station and report it to the detective division. She did so and then returned to the duplex with a detective and two other officers. On returning to the premises, Ms. Carolina found

various items in the first floor apartment missing or destroyed.

The defense gave a different version of events. One defense witness was Purvis Wright, who testified that he and another man helped Appellant and Coleman move out of their apartment in April, 1980. He could not recall the exact date. They began moving at about noon and continued into the evening. The entire job was done in one day. Wright testified that no one went into the first floor apartment and nothing was taken from it. Coleman also testified for the defense and denied that the first floor apartment was entered or that anything was taken from it. She said that all of the moving was done on April 1, 1980 and she was not on the premises on April 3, the date Ms. Carolina claimed the crime occurred.

The Commonwealth's case depended solely on Ms. Carolina's testimony. Her story was pitted against a contradictory version given by defense witnesses. The case had to be decided on the basis of the credibility of the witnesses. Appellant considered Ms. Carolina's testimony incredible in that it was not likely that a police officer, on being told that a burglary was in progress one block away, would tell her to go to the police station. The police officers who allegedly did go to the scene should have appeared to corroborate Ms. Carolina's testimony. Ms. Carolina was asked the name of the detective. She said she did not know it. That kept the defense from checking her story by inquiring of the police. Ms. Carolina's credibility was further weakened by a discrepancy in her testimony concerning the couch that was allegedly taken. On direct examination, she testified that she saw the couch being taken from the apartment on her arrival at the scene. On cross-examination, she testified that when she went into the apartment with the police, the couch was inside. Appellant wished to impeach Ms. Carolina's credibility still further by bringing out certain facts on cross-examination to establish a motive for fabricating the charge. Appellant wished to establish that he and Coleman had accused Ms. Carolina of stealing from

them, that Ms. Carolina had shut off the utilities, and that Ms. Carolina was serving a prison sentence after being convicted of aggravated assault for throwing lye on Coleman. The court would not allow cross-examination in any of these areas. Appellant claims that this limitation of cross-examination was improper and on that basis seeks reversal of his conviction.

Criminal defendants have a constitutional right to confront witnesses against them, which includes the right to cross-examine, *Smith v. Illinois*, 390 U.S. 129, 88 S.Ct. 748, 19 L.Ed.2d 956 (1968). Cross-examination may be employed to test a witness' story, to impeach credibility, and to establish the witness' motive for testifying, *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). In that case the court held that the defendant in a grand larceny and burglary case was entitled to cross-examine a key prosecution witness to show that he was on probation due to an adjudication of juvenile delinquency. The purpose was to establish that the witness was biased because of his vulnerable status.

Our own cases establish a right to cross-examine a witness to show a motive for fabricating testimony. *Commonwealth v. Cheatham*, 429 Pa. 198, 239 A.2d 293 (1968), was a murder case where a key prosecution witness was at the scene of the crime, had the opportunity to kill decedent, and was therefore a potential suspect. The defense wished to cross-examine the witness to show that he entered into a homosexual relationship with another man, that the relationship was interrupted when decedent entered into a similar relationship with the same man, and that the witness resumed the relationship after the murder. The proposed cross-examination was proper to show that the witness had a motive to dispatch the decedent and implicate the defendant. It would have been combined with certain weak points the defense claimed existed in the Commonwealth's case. The instant case is similar in that the excluded cross-examination would have established a motive to fabricate, which would have been combined with weak points

already existing in Ms. Carolina's testimony. Other cases also support the right to show a witness' motive on cross-examination. In *Commonwealth v. Coades*, 454 Pa. 448, 311 A.2d 896 (1973), the defense was entitled to cross-examine a witness to show that he was under indictment for the same crime as the defendant. The purpose was to show the witness' interest in the case. In *Commonwealth v. Sullivan*, 485 Pa. 392, 402 A.2d 1019 (1979), the defendant was charged with hindering apprehension and simple assault on the basis of a confrontation with a police officer who was attempting to arrest his son. The defense was entitled to cross-examine the officer on his suspension from the force after the incident. The suspension was to run pending the outcome of the prosecution of the defendant. The defense was entitled to show that the officer had an interest in the outcome of the case that might have given him a motive to testify. In *Commonwealth v. Dawson*, 486 Pa. 321, 405 A.2d 1230 (1979), a murder defendant claimed that his alleged inculpatory statement was fabricated. He was entitled to cross-examine the detective who claimed to have taken the statement about a beating he allegedly administered to a co-defendant and about the fact that he was subsequently transferred out of the homicide division. The defense claimed that the detective was motivated to fabricate the statement to account for the time he beat the co-defendant and that the transfer was a disciplinary action against the detective that further motivated him to testify falsely. Another relevant case is *United States v. Miles*, 480 F.2d 1215 (2d Cir., 1973), where a police officer testified that the defendant sold him narcotics. The defense was entitled to cross-examine the officer to show that he had been suspended because of pending charges, including, *inter alia*, bribery and drug dealing. The purpose was to show that the officer was in a vulnerable position and might have been motivated to testify falsely to ingratiate himself with his superiors.

The above cited cases establish that a witness may be cross-examined for the purpose of showing a motive to

give false testimony. That is a proper method of impeachment. In the instant case, the disallowed questions were relevant as to Ms. Carolina's motive. The disallowance of the questioning was particularly prejudicial here. The evidence consisted solely of testimony in which the witnesses for the two sides presented conflicting versions of the facts. The outcome therefore depended on the credibility of the witnesses. There were already indications that Ms. Carolina's testimony was not credible. Appellant was entitled to build on such weaknesses by exploring the witness' motive, *Commonwealth v. Cheatham, supra.* The disallowed questions, if they showed what Appellant expected them to show, would have been crucial in further weakening Ms. Carolina's testimony. A different outcome would quite possibly have resulted. The refusal to allow the questioning was reversible error.

The Order of the Superior Court is reversed and the case is remanded to the Court of Common Pleas for a new trial.

HUTCHINSON, J., files a concurring opinion.

HUTCHINSON, Judge, concurring.

I concur in the result. I cannot agree with the implication in the majority opinion that cross-examination concerning past incidents which tend to show that a complainant was motivated by ill will in bringing the prosecution is always beyond the broad discretion the trial court has in determining when to permit or cut off cross-examination on collateral matters. *See In Re Townsend's Estate,* 430 Pa. 318, 241 A.2d 534 (1968); *Downey v. Weston,* 451 Pa. 259, 301 A.2d 635 (1973) (impeachment). The sole issue in this case was whether the appellant stole from the complainant. The facts and circumstances surrounding prior fights and disagreements were properly excluded as collateral. Nevertheless, I concur in the result because the complainant's prior conviction for aggravated assault on this appellant is so highly relevant and so easily proven or disproven that the trial judge abused his discretion in not permitting appellant to refer to it on cross-examination. Evidence of the

prior conviction could have been successfully segregated from the other collateral matters thus allowing the admission of the prior conviction without letting the collateral matters bury the issue of whether appellant was guilty of the crimes charged here.